IN THE UNITED STATES DISCTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RED ZONE 12, LLC,** *et al.*, : | |
| : | Case No. 2:17-CV-250 |
| **Plaintiffs,** : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Chelsea M. Vascura |
| **CITY OF COLUMBUS,** *et al.*, : | |
| : | |
| **Defendants.** : | |

## OPINON AND ORDER

This matter comes before the Court on Defendants City of Columbus, Ohio (the "City") and Richard C. Pfeiffer, Jr.'s Motions for Judgment on the Pleadings (ECF Nos. 6, 28) and Motion for Sanctions (ECF No. 24). As an initial matter, the First Motion for Judgment on the Pleadings is **MOOT**, given that it sought judgment on the original Complaint, which is no longer operative. (*See* ECF Nos. 18, 19). In their Second Motion for Judgment on the Pleadings, Defendants seek to dismiss all counts alleged in the Amended Complaint with the exception of the breach of express contract claim against the City.[1] For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings as to the Federal constitutional claims and **REMANDS** the remaining state law claims to the Court of Common Pleas of Franklin County, Ohio. Defendants' Motion for Sanctions is **DENIED AS MOOT.**

---

[1] The Court notes that Defendants requested oral argument on these issues. The Court determined that oral argument was not necessary or beneficial, and thus **DENIES** the request.

# I. BACKGROUND

## A. Factual Background

Plaintiff Redzone 12 LLC was formed on August 12, 2012, to manage and operate a nightclub business known as "Red Zone." (ECF No. 19 at ¶ 27). The nightclub was located at 303 South Front Street, Columbus, Ohio. (*Id.*). Plaintiff 303 S. Front Street LLC was formed on May 11, 2012 to own and lease the property at 303 South Front Street. (*Id.* at ¶ 28). Plaintiffs Christopher J. Corso and Michael Gallicchio are members of Red Zone 12 LLC and/or 303 S. Front Street LLC. (*Id.* at ¶ 29). Defendant Richard C. Pfeiffer was the City Attorney for Defendant City of Columbus at all relevant times. (*Id.* at ¶ 32).

In December of 2012, Red Zone opened to the public. (*Id.* at ¶ 41). It operated as "an urban or 'hip hop' nightclub . . . serving mainly minority and African American customers." (*Id.*). Red Zone employed approximately 80-100 off duty police officers to provide security for the nightclub, in conjunction with a private security company. (*Id.* at ¶ 43). Red Zone operated without any significant incidents until November 10, 2013[2], when Red Zone hosted a show featuring hip hop artist Rich Homie Quan. (*Id*. at ¶ 44). That night, a gang-related shooting involving a member of the Short North Posse occurred at Red Zone. (*Id*.). After the incident, Red Zone shut down its business pending an investigation into the shooting. (*Id.* at ¶ 49). Approximately two weeks later, the police informed Red Zone that the business was not responsible for the shooting. (*Id.*). Red Zone then resumed its operations, at the suggestion of and with the blessing of the City police. (*Id.*).

After receiving the police's permission to reopen, Red Zone began holding events to end gang violence. (*Id.* at ¶ 50). On December 21, 2013, the club hosted one such event—another

---

[2] The complaint in the nuisance action, discussed below, does allege some sales of alcohol to underage individuals before and after November of 2013. (ECF No. 19-1).

2

show featuring Rich Homie Quan. (*Id.*). In the early hours of December 22, despite heavy security by both the City and a private security company, another shooting occurred, this time, fatal. (*Id.*). Following this shooting, Red Zone immediately closed down the nightclub and never reopened its doors for business. (*Id.* at ¶¶ 53, 71).

On January 28, 2014, Mr. Corso and Mr. Gallicchio, without counsel, met with City officials, including George Speaks and Steve Dunbar, to discuss the shooting and the status of Red Zone. (*Id.* at ¶ 54). At the meeting, Plaintiffs allege that an agreement was reached whereby Plaintiffs agreed to close the "large night club" business operating at 303 S. Front Street in exchange for them being able to keep a liquor license and continue operating as an alternative business such as a restaurant, bar, grocery, or carryout. (*Id.* at ¶ 55). According to the Complaint, the City agreed that so long as the business did not operate as a large nightclub from that time forward, the City would not bring any legal action against the business, nor object to transferring its liquor license to a new business. (*Id.* at ¶ 56). Mr. Dunbar, an assistant city attorney, was supposed to memorialize the agreement in writing, on behalf of Mr. Pfeifer. (*Id.* at ¶ 57).

While waiting to receive a draft, Mr. Corso and Mr. Gallicchio immediately shut down Red Zone, closed the nightclub business, and evicted the tenant business operator in reliance on the agreement. (*Id.*). When they received a draft agreement over a month later, however, it did not memorialize what Plaintiffs agreed to, and instead sought to permanently enjoin Plaintiffs from ever conducting any business at 303 S. Front Street that involves dancing or alcohol. (*Id.* at ¶¶ 58-59). After Plaintiffs received the draft agreement from Defendants, the parties engaged in discussions in which Plaintiffs asked Defendants to honor the agreement reached at the January meeting. (*Id.* at ¶ 63). Defendants refused, and instead demanded that Plaintiffs agree to a

permanent injunction restricting them from using the premises to sell alcoholic beverages, and objected to Plaintiffs transferring their liquor license to a new business.[3] (*Id.* at ¶¶ 64, 65). Plaintiffs allege that Defendants indicated that the area of the city surrounding 303 S. Front Street was undergoing redevelopment and Plaintiffs' business, which served "urban" and "hip hop" minority residents did not fit with their redevelopment plans. (*Id.* at ¶ 66).[4]

Defendants then threatened to file a civil nuisance abatement action, and to sue Mr. Corso and Mr. Gallicchio individually if they did not force Red Zone 12 LLC and 303 South Front Street LLC to sign a permanent injunction barring them from conducting business again in the entire county. (*Id.* at ¶¶ 67, 69). Despite the lack of any business activity at 303 South Front Street, Defendants filed a civil nuisance action in the Environmental Division of the Franklin County Municipal Court on June 11, 2014—approximately six months after the last shooting. (*Id.* at ¶ 72). At first, Defendants named only Red Zone 12 LLC and 303 South Front Street LLC as defendants in the nuisance action, but later amended their complaint to name Mr. Corso and Mr. Gallicchio individually. (*Id.* at ¶¶ 74, 76). The amended complaint also reported a decreased number of police service calls allegedly made to Redzone. (*Id.* at ¶ 76, Ex. A; Ex. B).

During the litigation of the nuisance action, Defendants sent a memorandum to the City police officers instructing them not to speak to Plaintiffs, and filed a motion for a protective order to stop Plaintiffs from contacting their off duty officers. (*Id.* at ¶ 77). Plaintiffs also allege that Defendants obstructed discovery and refused basic discovery requests regarding the factual basis for the nuisance action. (*Id.* at ¶¶ 77, 79). During depositions in the nuisance action,

---

[3] On September 8, 2014, the Ohio Department of Commerce, Division of Liquor Control, denied and rejected Plaintiffs' 2014-2015 renewal of their liquor permit. (ECF No. 21 at Ex. 1).

[4] Defendants vehemently oppose this allegation, which is one of the main bases on which they seek sanctions.

representatives of the City admitted that the investigation for underage alcohol sales closed once Red Zone stopped doing business in December of 2014 and that Red Zone could not constitute a nuisance since the business had closed. (*Id.* at ¶¶ 85, 88, 89, 90, 92). One deponent testified that Mr. Corso's reputation for conducting business in the city is "excellent" and that he is a very reputable businessman. (*Id.* at ¶ 94). Another deponent agreed that Defendants reached an agreement with Plaintiffs at the January 28, 2014 meeting, and that the agreement was indeed that the property could be used by Plaintiffs for alternative businesses so long as it was not a large nightclub. (*Id.* at ¶¶ 98, 99).

Because of the costs Plaintiffs had to incur as a result of the lawsuit and their agreement with the City not to reopen the business, Plaintiffs suffered financial losses and were forced to sell the property at a loss to Wood Run Partners, LLC. (*Id.* at ¶ 113; Ex. C). Defendants filed a motion for summary judgment seeking a permanent complete injunction against the business, its owners, and the real property, while Plaintiffs filed a motion to dismiss the case. (*Id.* at 114). On January 15, 2016, the environmental court stayed the case so that Plaintiffs could consummate a sale of the property and announced its intention to dismiss the nuisance action. (*Id.* at ¶ 115). Defendants objected to the court's January 15 order, and asked the court to reconsider and grant its summary judgment motion, which would have imposed a permanent injunction against all plaintiffs and their business as well as the property, across the county. (*Id.* at ¶ 116).

The environmental court entered an order on March 11, 2016, denying the City's motion to reconsider, denying the summary judgment motion as moot, and dismissing the nuisance action and Plaintiffs' counterclaims without prejudice. (*Id.* at ¶ 118; Ex. C). The order held that there was "absolutely no public harm that needs prevented as the business that operated at the

subject property has been closed down for roughly two years, [and] the property has been transferred to a reputable developer." (*Id.* at Ex. C). The court further found no evidence warranting a county-wide injunction against Plaintiffs doing business elsewhere. (*Id.* at ¶ 119). The City did not appeal. (*Id.* at ¶ 120).

### B. Procedural History

On March 13, 2017, Plaintiffs initially filed the instant action in the Court of Common Pleas of Franklin County, Ohio. (*See* ECF No. 1 at Ex. A). Defendants removed the case on March 28, 2017. (*Id.*). Defendants filed the First Motion for Judgment on the Pleadings on April 10, 2017, but the Court granted Plaintiff's Motion to Amend the Complaint and an Amended Complaint was filed on May 31, 2017. (ECF Nos. 6, 11, 18, 19). The Amended Complaint brings claims for violation of procedural and substantive Due Process and Equal Protection under the Fourteenth Amendment; unconstitutional taking under the Fifth Amendment and the Ohio Constitution; Breach of Contract; Promissory Estoppel; Negligent Misrepresentation; Malicious Prosecution; and Abuse of Process. The Amended Complaint also seeks a petition for Writ of Mandamus. Defendants filed the Second Motion for Judgment on the Pleadings on June 26, 2017 and a Motion for Sanctions on July 19, 2017. (ECF Nos. 21, 24). These matters are fully briefed and ripe for disposition.

### II. STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the Court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a

Rule 12(b)(6) motion in reviewing the district court's decision."). The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

When a party moves for judgment on the pleadings, the Court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to allegations in the complaint, the Court may take into account "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted).

### III.    ANALYSIS

#### A.    Constitutional Claims

##### 1.    Absolute Immunity of Mr. Pfeiffer

Absolute prosecutorial immunity shields prosecutors from liability under § 1983 for actions occurring in the scope of their prosecutorial duties. *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976). To determine whether an official is entitled to absolute prosecutorial immunity, courts use a "functional approach" and "look to the nature of the function performed, not the identity of the actor who performed it." *Cooper v. Parrish*, 203 F.3d 937, 946–47 (6th Cir. 2000) (internal quotations omitted). The functional approach "focuses on whether the prosecutor's activities are intimately associated with the judicial phase of the criminal process."

*Id.* (citing *Imbler*, 424 U.S. at 430)). Acts that occur in the course of a prosecutor's role as an advocate for the state, such as acts "undertaken by a prosecutor in preparing for the initiation of judicial proceedings . . . are entitled to protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). If, on the other hand, a prosecutor is performing investigatory functions normally performed by detectives or police officers such as searching for clues and corroboration to recommend that a suspect be arrested, no absolute immunity attaches. *Id.* (citing *Burns v. Reed*, 500 U.S. at 494-96). In *Cooper v. Parrish*, the Sixth Circuit held that prosecutors were entitled to absolute immunity for their decision to file public nuisance and civil forfeiture complaints against nightclubs. 2013 F.3d at 948.

Here, Defendants assert that Mr. Pfeiffer is entitled to absolute prosecutorial immunity because Plaintiffs' constitutional arguments merely complain about his decision to file the nuisance action, which is an action that is protected by immunity under *Cooper*. Plaintiffs contend that Mr. Pfeiffer was not merely acting as a prosecutor, but instead acted as the "sole 'investigator' and decision maker about whether and when to file the nuisance action." (ECF No. 23 at 27). They argue Mr. Pfeiffer usurped executive and administrative powers of the government by arbitrarily using the nuisance statute to control and regulate the businesses conducted in the City.

Upon examination of the Amended Complaint, it is apparent that the action of Mr. Pfeiffer's that Plaintiffs take issue with is, indeed, his "discriminatory and selective use and enforcement of Ohio's civil nuisance statute." (ECF No. 19 at ¶ 122); *see also id.* at ¶ 132 ("The filing of the civil nuisance action as a means to achieve the city's ulterior purpose of redeveloping the area for the wealthy and powerful was an unconstitutional deprivation of plaintiffs' property and business interests"); *id.* at ¶ 135 ("By filing the civil nuisance action, . . .

Mr. Pfeiffer acted under the color of state law and deprived the plaintiffs of rights secured by federal and state law."). Even construed in light most favorably to the Plaintiffs, these allegations are not sufficient to support a finding that Mr. Pfeiffer's actions are not entitled to immunity. Plaintiffs focus on the reasons Mr. Pfeiffer brought the nuisance action, but the reasons do not matter. "The decision to prosecute or not prosecute, even if malicious, enjoys absolute immunity." *Kennedy v. Grattan Twp.*, No. 106-CV-657, 2007 WL 1108571, at *4–5 (W.D. Mich. Feb. 14, 2007), *report and recommendation adopted*, No. 106-CV-657, 2007 WL 1108566 (W.D. Mich. Apr. 10, 2007) (citing *Burns*, 500 U.S. at 492-93). Thus, the Court finds that Mr. Pfeiffer is entitled to absolute prosecutorial immunity. *See Cooper*, 203 F.3d at 948 ("[T]he prosecutors in the present case are entitled to absolute immunity for their decision to file the public nuisance and civil forfeiture complaints and for their decisions to seek temporary restraining orders."); *See also Shoultes v. Laidlaw*, 886 F.2d 114, 118 (6th Cir. 1989) (finding City Attorney absolutely immune from suit relating to an injunction action to enforce a zoning ordinance).

The Amended Complaint also includes some allegations regarding the act of objecting to the Plaintiffs' liquor license. *See* ECF No. 19 at ¶ 123 (alleging that the City and Mr. Pfeiffer "have also violated the due process and equal protection clauses in violation of 42 U.S.C. § 1983 by . . . objecting to renewal of their liquor license when there was no rational or legitimate basis to do so."). It is unclear exactly what Mr. Pfeiffer's role was in the liquor proceeding, but even if he did personally object at the hearing, this action was clearly related to Mr. Pfeiffer's role in prosecuting the public nuisance action and thus does not change this Court's immunity analysis. *See* Ohio Rev. Code Ann. § 3767.03 (mandating that any officer bringing a nuisance action notify the division of liquor control at the time of bringing the action); *see also Nance v. City of*

*Elgin*, No. 06 CV 6608, 2009 WL 3677819, at *5 (N.D. Ill. Nov. 2, 2009) (finding city attorney's "role in getting [plaintiffs'] liquor license revoked . . . was prosecutorial in nature and therefore covered under prosecutor immunity.").

2. Municipal Liability Under § 1983

Municipalities can "only be held liable under § 1983 for the constitutional violations of their employees only where the municipality's policy or custom led to the violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978). Official policies include "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). To properly state a claim for municipal liability, a plaintiff must allege: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance of or acquiescence to federal rights violations." *Id.* (citing *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir.2013)).

Defendants argue that Plaintiffs have not alleged enough operative facts to show that the City had a policy or custom that caused his harm. (ECF No. 21 at 11). Plaintiffs respond that the City's use of nuisance actions as a means to control businesses and further their redevelopment program is a custom, practice, or policy sufficient to find *Monell* liability. (ECF No. 23 at 31). Specifically, they contend that "the single action of the city attorney is sufficient to convey liability under § 1983," presumably under the second path to liability outlined in *D'Amborosio*. (*Id.* at 33). Pfeiffer, however, cannot be the conduit for municipality liability. In

examining facts very similar to those facts at issue here, the Sixth Circuit recently held that because a city's law director was acting on behalf of the state when brining a nuisance action, the law director's actions could not constitute the basis for liability of the city under *Monell*. *Ohio ex rel. Moore v. Brahma Inv. Grp., Inc.*, No. 17-3458, 2018 WL 501393, at *2 (6th Cir. Jan. 22, 2018).

In *Ohio ex rel. Moore*, after receiving complaints of illicit drug sales and prostitution at plaintiffs' hotel, the law director for the City of Norwood obtained a temporary injunction declaring the hotel a nuisance and shutting it down. *Id.* at *1. Plaintiffs filed suit, arguing that the law director, the City of Norwood, and the city's mayor "were motivated by a discriminatory animus in the bringing the nuisance action." *Id.* The district court granted the city's motion for judgment on the pleadings, holding in part that the city was not liable for the law director's actions under § 1983 because the law director was "acting on behalf of the State of Ohio, not the City, when he brought the nuisance action pursuant to Ohio Revised Code § 3767.03." *Id.* at *2. The Sixth Circuit upheld that finding, stating that "[b]ecause [the city law director] brought the nuisance action on behalf State, not the City, all claims against the City and [the mayor] were properly dismissed" and "even if [the law director] violated [plaintiffs'] federal and state rights, the City and [the mayor] are not liable." *Id.*

Here, Mr. Pfeiffer, the City Attorney, brought the nuisance action under the same statute as the city law director in *Ohio ex rel. Moore*—Ohio Revised Code § 3767.03. That provision states that "[w]henever a nuisance exists," the "city director of law," "prosecuting attorney of the county" or "other similar chief legal officer of a municipal corporation in which the nuisance exists . . . may bring an action in equity *in the name of the state* . . . to abate the nuisance." Ohio Rev. Code Ann. § 3767.03 (emphasis added). The statutory language and the court's holding in

11

*Ohio ex rel. Moore* leave no doubt that Mr. Pfeiffer was acting on behalf of the State of Ohio here—not on behalf of the City. *See also D'Ambrosio*, 747 F.3d at 386 (holding that county prosecutor was not a "policymaking official" of county because he was acting as an arm of the state when prosecuting state criminal charges, so his actions could not be attributed to the municipality). Thus, the City is not liable for the Mr. Pfeiffer's actions.

Nor have Plaintiffs adequately alleged the existence of a policy or practice of the City outside of Mr. Pfeiffer's actions. Plaintiffs do allege that "Defendants' use of the civil nuisance action process has unfortunately become a city policy, custom, and/or practice."[5] (ECF No. 19 at ¶ 14). But Plaintiffs' "pleading deficiency is not redeemed by [this] lone, conclusory allegation." *D'Ambrosio*, 747 F.3d at 388. A reading of the Amended Complaint makes clear that the thrust of the allegations of inappropriate conduct involve Mr. Pfeiffer, or individuals Plaintiffs allege acted on behalf of Mr. Pfeiffer. *See* ECF No. 19. at ¶ 34 (alleging that Mr. Pfeiffer was the individual who instituted the "Zone Initiative Team"); *id.* at ¶ 37 ("Mr. Pfeiffer and his 'team' have improperly usurped control of local self government by regulating and controlling local businesses"); *id.* at ¶ 39 (alleging that the Zone Initiative Team is comprised of lawyers in Mr. Pfeiffer's office with "whom he is directly involved and over whom he exercises control and discretion"); *id.*at ¶ 54 (alleging that the individuals from the City who attended the January 28, 2014 meeting were there "on behalf of Mr. Pfeiffer"). The Amended Complaint, then, "focus[es] almost exclusively on the conduct of" Mr. Pfeiffer, and it is "improper[] to impose liability upon the [City]" in these circumstances. *D'Ambrosio*, 747 F.3d at 389.[6]

---

[5] There is no allegation that the City has a policy of unconstitutional objections to liquor licenses, and thus that proposition is not discussed here.

[6] The Court also notes that Plaintiffs frequently reiterate that the City actually has a policy to try to work with business owners before bringing a nuisance action, which lends some support for

B. **State Law Claims**

Because the Court is dismissing all of the federal constitutional claims, the Court declines to exercise its supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367(c)(3). That "jurisdictional provision states that district courts may decline to exercise supplemental jurisdiction over a state-law claim if the district court has dismissed all claims over which it has original jurisdiction." *Wayne Watson Enterprises, LLC v. City of Cambridge*, 243 F. Supp. 3d 908, 928–29 (S.D. Ohio 2017) (quoting 28 U.S.C. § 1367(c)(3)). "The Sixth Circuit routinely emphasizes this provision in holding that a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Id.* (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Courts should consider principles of federalism and comity in determining whether to exercise supplemental jurisdiction, and needless decisions of state law should be avoided. *Wayne Watson*, 243 F. Supp. at 929 (citing *Rouster*, 749 F.3d at 454). Here, in light of the failure of Plaintiffs' federal claims this Court will not address the remaining state law claims for takings under the Ohio Constitution, breach of contract, promissory estoppel, negligent misrepresentation, malicious prosecution, or abuse of process, nor the claim that Plaintiffs are entitled to a writ of mandamus.

The only remaining question is whether to dismiss the claims without prejudice or remand them to state court. Whether to remand or dismiss a matter is left to the discretion of the district court. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000) (internal

---

the idea that if there was a policy of improperly using the nuisance abatement power it was Mr. Pfeiffer's alone, not the City's policy. *See* ECF No. 19 at ¶¶ 100, 124, 134, 139.

citations omitted). District courts should consider the values of economy, convenience, fairness, and comity when determining whether to remand the claims, rather than dismiss them. *Id.* (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343 (1988)). Here, Plaintiffs initially filed their action in state court. Having weighed this factor, as well as the relevant considerations involving judicial economy, convenience, fairness to the parties, and comity, this Court in its discretion remands these claims to the state court. *See McCoy v. Mv Residential Prop. Mgmt., Inc.*, No. 2:14-CV-2642, 2016 WL 1392483, at *9–10 (S.D. Ohio Apr. 8, 2016) (remanding state law claims to state when "Plaintiff originally sought to pursue her claims in state court); *see also Wayne Watson*, 243 F. Supp. at 929 (remanding state law claims to common pleas court).

### C. Sanctions

Finally, Defendants seek to impose sanctions on Plaintiffs for two statements made in the Amended Complaint. First, Defendants contend that Plaintiffs "falsely accused defendants of making racist statements in May of 2014," based on the allegation that Defendants "indicated . . . that plaintiffs' business serving the 'urban' and 'hip hop' and minority residents did not fit with their redevelopment plans." (ECF No. 24 citing ECF No. 19 at ¶ 66). The Court must construe all well-pleaded material allegations of the pleading of the opposing party as true. Plaintiffs' statement that Defendants 'indicated . . . that plaintiffs' business serving the 'urban' and 'hip hop' and minority residents did not fit with their redevelopment plans is precisely that: an allegation. Without more, the Court cannot accept Defendants' unsupported contention that the allegation is false, and certainly cannot award sanctions on that basis. As Rich Homie Quan himself stated—albeit in a different context—"[c]an't make this up when you the author." RICH HOMIE QUAN, *The Author*, on RICH AS IN SPIRIT (Motown Records 2018).

Second, Defendants "take issue with Plaintiffs' allegation that . . . [Westley Phillips] prepared, filed, and prosecuted the civil nuisance action at issue in this complaint" when that is factually incorrect. (*Id.* citing ECF No. 19 at ¶ 39). Regardless of whether that statement is factually correct, the relief Defendants request in their Motion for Sanctions is striking the allegations from the First Amended Complaint, or an order awarding attorneys' fees and costs "[i]f Defendants are forced to proceed with and litigate issues related to those allegation." (ECF No. 24 at 5). As discussed above, the Court is dismissing the constitutional claims and remanding the state claims. Thus, the request for sanctions is **MOOT**.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' First Motion for Judgment on the Pleadings (ECF No. 6) as **MOOT**. The Court **GRANTS** Defendants' Second Motion for Judgment on the Pleadings (ECF No. 21) as to the federal constitutional claims and **REMANDS** the remaining state law claims to the Court of Common Pleas of Franklin County, Ohio. Defendants' Motion for Sanctions (ECF No. 24) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**DATED: March 20, 2018**      **UNITED STATES DISTRICT JUDGE**